OVERLAND SIOUX CITY COMPANY, Appellant, v. R. J.
CLEMENS, Appellee (two cases).

F. H. CLARK, Appellant, v. ASHTON CLEMENS, Appellee
(two cases).

**APPEAL AND ERROR:** Scope of Review—Improper Demurrer. A
1   general equitable demurrer, that the facts pleaded do not
entitle the pleader to the relief prayed, is wholly unallowable
in a *law* action; yet, when no objections are made at any stage
of the proceedings to the form or propriety of such demurrer,
the appellate court will overlook such error, and review the
cause on the properly assigned errors.

**CORPORATIONS:** Transfer of Shares—Recovery Because of Un-
2   anticipated Event. He who buys corporate shares of stock, and
pays a sum therefor which includes the then owner's esti-
mated interest in the corporation's undivided surplus, may not
recover of the seller such estimated interest because, subse-
quent to the sale, the Federal government enacted a *retroactive*
tax law, under which the corporation was compelled to pay a
*retroactive* tax which wholly dissipated the corporation's undi-
vided surplus.

**CORPORATIONS:** Transfer of Shares—Mistake of Law and Fact.
3   A plea of mistake of law and fact may not be based on unan-
ticipated matters, occurring subsequent to the transaction in
question. So held in the transfer of corporate stock.

**CORPORATIONS:** Recovery of Dividend Because of Unanticipated
4   Event. A corporate dividend, duly declared and distributed, is
not rendered illegal by the fact that, subsequent to the declara-
tion and distribution of the dividend, the Federal government
unexpectedly enacted a retroactive tax law, under which the
corporation was compelled to pay (generally, and not out of
any particular fund) a tax on its income for a part of its fiscal
year in which the income accumulated on which the dividend
was declared. It follows that the corporation may not, after
paying said tax, recover any part of said dividend from the
stockholder, on the theory that the declared dividend was ex-
cessive in view of subsequent events.

*Appeal from Polk District Court.*—HUBERT UTTERBACK,
Judge.

NOVEMBER 16, 1920.

ACTION at law by the Overland Sioux City Company,
Incorporated, against R. J. Clemens; and another action
at law by the same company against Ashton Clemens was
begun, and later consolidated. A demurrer on the ground
that the facts stated in each division of each petition did
not entitle plaintiff to the relief prayed, was sustained, and,
as the plaintiff refused to plead over, judgment was en-
tered, dismissing the petition; and plaintiff appeals.

F. H. Clark began an action at law against Ashton
Clemens, and another against R. J. Clemens, and these ac-
tions were, on motion, consolidated. A demurrer, such as
stated above, was filed, and like ruling and judgment en-
tered. The plaintiff in these actions also appeals. By
agreement, the causes are submitted together.—*Affirmed.*

*Sears, Snyder & Gleysteen,* for appellants.

*Sargent & Gamble,* for appellees.

LADD, J.—The plaintiff was organized as a corporation,
July 1, 1914, with capital stock of $25,000, divided into 250
shares, of the par value of $100 each. To each of the de-
fendants was issued a certificate for 50 of these shares, and
the remaining stock went to R. W. Schutt and F. H. Clark.
These four became directors and officers of the company.
Its fiscal year ended July 1st of each year, and the revenue
department of the government permitted it to make annual
reports for the assessment of taxes to that day of each year.
On July 1, 1917, the company had on hand, as net earnings,
$17,084.73, and a surplus of $881.33, or altogether, $17,-
966.06. A dividend of 60 per cent was then declared, or
$15,000, so that, after paying this, but $2,966.06 of the net

earnings and surplus remained.    Clark purchased of the defendants the 100 shares of stock held by them, July 27th following, paying therefor to each one fifth of the earnings and surplus then on hand, or $593.21, and, in addition thereto, $150 per share for the stock held by each, or $7,500.    All Federal taxes had been provided for when the dividend was declared.    But, on October 3d following, an act of Congress (40 Stat. at L. 300) to provide a revenue to defray war expenses and for other purposes was approved. This act is said to have been retroactive, and the taxes to be assessed upon the income of every corporation during the year of 1917:    that is, from January 1, 1917. Section 200 of that act in part provides that:

"If a corporation or partnership, prior to 'March first, nineteen hundred and eighteen, makes a return covering its own fiscal year, and includes therein the income received during that part of the fiscal year falling within the calendar year nineteen hundred and sixteen, the tax for such taxable year shall be that proportion of the tax computed upon the net income during such full fiscal year which the time from January first, nineteen hundred and seventeen, to the end of such fiscal year bears to the full fiscal year."

In other words, the tax on the net income, under the act of Congress mentioned, for the year 1917 would be ascertained, and, as the fiscal year in plaintiff's business ended July 1, 1917, one half of the said taxes would be added to those assessed under the preceding acts of Congress for the fiscal year of its business terminating on that day.    This amounted to $8,513.49.    None of the parties to these actions had any knowledge or intimation that the act of Congress approved October 3, 1917, was contemplated, nor did any of them anticipate the same, and no provision with reference thereto was made, in declaring and distributing the dividend.    Thereafter, and prior to April 1, 1918, plaintiff was required, under the law, to make a return of its income from July 1, 1916, to July 1, 1917, and to include its statement of the amount of taxes author-

ized by the act of October 3, 1917, and was compelled to and did pay the sum of $8,513.49 as war profits tax, to the revenue department of the government. In each of the suits by the Overland Sioux City Company, Incorporated, it demands judgment against each defendant for the proportion of this amount, less the earnings and surplus on hand, that his shares of stock bear to the entire number of shares issued by the company, or one-fifth of $8,513.49 less $2,966.06, or $1,109.48. Plaintiff bases this demand on two grounds: (1) That, by reason of the retroactive effect of the act of Congress approved October 3, 1917, the parties hereto, by mutual mistake of law and fact, declared a dividend on the stock for $5,547.42 more than it should have done, and, owing to such mutual mistake, plaintiff paid to each defendant $1,109.48 in excess of the amount which might have been legally paid as a dividend on said stock; and that the mutual mistake of law and fact was of the officers, in omitting to take into consideration said act in computing the net earnings and surplus of the company; and (2) that $1,109.48 was paid each defendant, contrary to the provisions of the company's articles of incorporation and by-laws. Clark, in the actions brought by him, claims that $593.21, or one fifth of the surplus and earnings on hand, was paid to each of the defendants for his stock more than he was legally entitled to, through mutual mistake of law and fact, and also that he was paid $1,109.48 for his stock in excess of the amount which he should have received from said stock; and because of this mutual mistake of law and fact, he prays recovery for these amounts.

I. The demurrer interposed in each action was general, and, as the suits are at law, might well have been overruled. Section 3562 of the Code; *Timken Carriage Co. v. Smith & Co.*, 123 Iowa 555; *Jones v. Brunskill*, 18 Iowa 129; *Davenport Gas L. & C. Co. v. City of Davenport*, 15 Iowa 6; and other decisions, too numerous for citation.

1. APPEAL AND
ERROR: scope
of review:
improper de-
murrer.

That such a demurrer is not permissible in a law action, does not appear to have been suggested in the

trial, and error on this ground has not been assigned. But error in sustaining the demurrer is assigned by appellant on other grounds. Will the assignment of other grounds or reasons for overruling the demurrer obviate considering that which, in itself, renders the ruling conclusively erroneous? In *Updegraft v. Edwards*, 45 Iowa 513, this court rules that a party, after recognizing the sufficiency of a general demurrer, might not take advantage of the defect. Raising no objection thereto in either court, as we think, was tantamount to an agreement that the issues at law should be presented in this irregular manner; and, as the precise objections to the petitions and amendments must be pointed out in assigning errors, or appear in the brief points, we are inclined to limit the review to the error assigned to the court's ruling on the demurrer.

II.   In the sale of the stock by the respective defendants to Clark, there was no mistake of fact or law. Each was aware of everything then known concerning the company's business and its property. None of the parties appears to have been possessed of prophetic powers. If, in negotiating for the sale of the stock, the earnings and surplus on hand were taken into account, this does not appear to have been on the theory that defendants, as shareholders, had any legal claim or interest therein. The company retained title thereto; for neither earnings nor surplus pass to shareholders until this is done through the declaration of dividends or distributed from the company's assets. That earnings on hand and surplus, in the absence of anything appearing to the contrary, belong to the corporation, and are to be considered as tending to enhance the value of the several shares of stock, will not be questioned. Undoubtedly, the purchaser took these matters into account, as he did the past earnings of the company, in ascertaining the value of the shares of stock purchased. What might happen to the company in the future was not a matter of negotiation. On that score, the purchaser took his chances quite as fully on any change

2.   CORPORA-
     TIONS : trans-
     fer of shares :
     recovery be-
     cause of un-
     anticipated
     event.

in the laws or enactment of new laws relating thereto as he did on its continued prosperity. The parties acted in good faith; and, as there existed no restrictions on the transfer of the stock, the respective defendants parted with, and Clark acquired, absolute title thereto. *Farmers' & Merchants' Bank v. Wasson,* 48 Iowa 336. Though the act of Congress, approved October 3, 1917, was, in a sense, retroactive, in that it assessed the war excess profits tax on the net income of the entire year 1917, such taxes were not payable by the shareholders, nor does it appear that Clark advanced or paid out any money on that account. Such taxes are made payable by the corporation, as appears from Section 14 of the act of Congress, approved September 8, 1916, which, in this respect, governs the act of Congress approved October 3, 1917. Even if there were a mutual mistake of fact or law then, it does not appear to have occasioned any loss to Clark, the plaintiff, in the actions brought by him. Moreover, the facts alleged do not constitute a mistake, mutual or otherwise. Neither party was in error as to any existing fact, nor concerning the law as it then existed; and the enactment of a law subsequently will not be construed as manufacturing a mistake when none existed. The demurrers to the petitions filed by Clark, but for their form, were rightly sustained.

3. CORPORA-TIONS: transfer of shares: mistake of law and fact.

III.   If the company paid out the dividend or any part of it illegally, it may be conceded that the portions so advanced to the shareholders might be recovered by the company, as of money had and received. But was the dividend or any part illegal? No one will so pretend, unless it was rendered so by the act of Congress, approved October 3, 1917. That act did not undertake to undo anything which had gone before. It did not require the payment of the excess profits war tax exacted from any specified fund, or income of any particular period. The only feature of the act in any sense retroactive

4. CORPORA-TIONS: recovery of dividend because of unanticipated event.

is the portion declaring the net income for the entire year 1917 the unit on which the tax levy should be made. This tax, not the income, is to be apportioned, where the taxable year is not the calendar year, but the fiscal year of the corporation. This appears from Section 200 of the act:

"The first taxable year shall be the year ending December thirty-first, nineteen hundred and seventeen, except that in the case of a corporation or partnership which has fixed its own fiscal year, it shall be the fiscal year ending during the calendar year nineteen hundred and seventeen. If a corporation or partnership, prior to March first, nineteen hundred and eighteen, makes a return covering its own fiscal year, and includes therein the income received during that part of the fiscal year falling within the calendar year nineteen hundred and sixteen, the tax for such taxable year shall be that proportion of the tax computed upon the net income during such full fiscal year which the time from January first, nineteen hundred and seventeen, to the end of such fiscal year bears to the full fiscal year."

The inclusion of proportion of the tax in the report of the period ending July 1, 1917, is purely administrative, having solely to do with the levy and collection of the tax long after the approval of the act. How, then, can it be said that the enactment of this act had any bearing or effect on the dividend declared, or transfer of the stock? Counsel have argued as though the tax must have been paid from the earnings of the company prior to July 1, 1917. The act contains no such requirement, and, as the tax was not payable until nearly a year later, there would seem to be no ground for such an inference. Nor is there any basis in the record for the suggestion that, to discharge the tax, the company must have encroached on its capital. The record warrants no such deduction. For all that appears, the company's earning capacity may have continued as before, and have been ample out of which to have discharged the tax long before it became payable. As indicated, the act was not retrospective, save as including the net income of the calendar year prior to October 3, 1917, with that

of the portion of the year following, in making up the net income on which taxes were to be collected and levied, and cannot be construed to have affected in any manner the legality of dividends paid, or the sale of stock. Indeed, for all that is alleged, there may have been no income during the first half of 1917. The exaction of taxes was prospective, and not such as was likely to impair the company's capital,—at least, it was not so alleged. What we have said disposes of the other error assigned.

The trial court's ruling, that none of the several petitions stated a cause of action, is—*Affirmed.*

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.